STATE OF NORTH CAROLINA v. REGINALD JEROME LOVE

No. 8910SC1254

(Filed 4 September 1990)

**1. Process § 6 (NCI3d) — subpoenas duces tecum — quashal for broadness**

In a prosecution for rape, sexual offense, and indecent liberties, the trial court did not err in quashing subpoenas *duces tecum* issued to the Wake County Mental Health Center, Wake Medical Center, Wake County Department of Social Services, and Wake County Public Schools requesting the production of all files and records relating to the child victim where the subpoenas made no reference to a specific time period, date, or contents and thus were too broad, and the trial court was not satisfied that the records sought contained any patently material evidence.

**Am Jur 2d, Witnesses §§ 14, 22.**

**2. Courts § 9 (NCI3d) — quashal of subpoenas duces tecum — another judge not overruled**

The trial court's ruling allowing a motion to quash subpoenas *duces tecum* did not result in one superior court judge overruling another because another judge had suggested at

a pretrial hearing that defense counsel could subpoena records not in the district attorney's possession.

**Am Jur 2d, Courts § 201.**

3. **Process § 6 (NCI3d) — quashal of subpoenas duces tecum — court's inspection of documents unnecessary**
   Unlike the procedure following a request for disclosure of evidence within the State's possession which requires an *in camera* inspection by the trial court, there is no requirement that the trial court review the records and files of nonparties sought pursuant to a subpoena *duces tecum* prior to quashing the subpoena.

**Am Jur 2d, Depositions and Discovery § 424; Witnesses § 22.**

4. **Criminal Law § 50.2 (NCI3d) — admissibility of lay opinion testimony**
   Testimony by the mother of an alleged rape, sexual offense and indecent liberties victim that the victim had never lied to her about anything of this magnitude was admissible lay opinion testimony under N.C.G.S. § 8C-1, Rule 701 since it was based on the perception of the witness and was helpful to an understanding of her other testimony.

**Am Jur 2d, Expert and Opinion Evidence §§ 30, 53, 54.**

5. **Criminal Law § 50.1 (NCI3d); Rape and Allied Offenses § 4 (NCI3d) — qualification of experts — symptoms of sexually abused children — victim's symptoms**
   The trial court did not err in qualifying a hospital counselor as an expert in counseling for sexually abused children and a pediatrician as an expert in child sexual abuse; furthermore, the court properly permitted these witnesses to testify as to the symptoms and characteristics of sexually abused children and to state their opinions that symptoms exhibited by the victim were consistent with sexual abuse.

**Am Jur 2d, Rape § 68.5.**

**6. Criminal Law § 904 (NCI4th); Rape and Allied Offenses § 19 (NCI3d)— indecent liberties—disjunctive instruction—unanimous verdict**

Defendant's right to a unanimous verdict was not violated by the trial court's instruction that an indecent liberty is an immoral, improper or indecent touching or act by defendant upon the child or an inducement by defendant of an immoral or indecent touching by the child.

**Am Jur 2d, Infants § 16; Rape § 108.**

**7. Rape and Allied Offenses § 7 (NCI3d)— first degree rape— first degree sexual offense—life sentences not cruel and unusual**

Mandatory life sentences imposed on defendant for first degree rape and first degree sexual offense do not constitute cruel and unusual punishment.

**Am Jur 2d, Criminal Law §§ 626, 627, 629, 630; Rape §§ 115, 116.**

APPEAL by defendant from judgment entered 23 June 1989 in WAKE County Superior Court by *Judge I. Beverly Lake, Jr.* Heard in the Court of Appeals 7 June 1990.

Defendant was indicted on 8 May 1989 for one count of first degree rape, one count of first degree sexual offense, and one count of taking indecent liberties with a minor. The State's evidence tended to show that in March 1988 the ten-year-old victim was living with her mother, defendant, her brother, infant step-brother, and grandmother. The victim testified that on 18 March 1988 she was in her room reading when defendant came into her room, pulled down his pants and underwear, pulled down her underpants, and put his "thing" in her. The victim also testified that defendant had fondled her breasts, digitally penetrated her vagina, and made her put her mouth on his "thing."

Defendant was found guilty on all charges and sentenced to two concurrent life sentences for rape and first degree sexual offense, and to a consecutive term of five years for indecent liberties. Defendant appeals.

STATE v. LOVE

[100 N.C. App. 226 (1990)]

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John F. Maddrey, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

WELLS, Judge.

[1] In his first assignment of error defendant contends that the trial court erred in quashing subpoenas *duces tecum* upon Wake County Mental Health Center, Wake Medical Center, Wake County Department of Social Services, and Wake County Public Schools.

N.C. Gen. Stat. § 15A-903(d) (1988) grants a defendant in a criminal case access as of right to documents and tangible objects that are "within the possession, custody or control of the State. . . ." However, the reports and records at issue in this case were not within the prosecutor's possession, custody, or control; therefore, they were not subject to discovery as of right. *See State v. Newell,* 82 N.C. App. 707, 348 S.E.2d 158 (1986) (No common law right of discovery in criminal cases, therefore, criminal defendant's right of access to documents determined by statute). Another alternative for the production of documents not subject to the criminal discovery statute is the use of a subpoena *duces tecum.* The subpoena *duces tecum* is the process by which a court requires that particular documents or other items which are material to the inquiry be brought into court. *Id.*

The intended purpose of the subpoena *duces tecum* is to require the production of a *specific* document or items *patently* material to the inquiry or as a notice to produce the original of a document. *See generally Vaughan v. Broadfoot,* 267 N.C. 691, 149 S.E.2d 37 (1966). Consequently, the subpoena *duces tecum* "must *specify* with as much precision as is fair and feasible, the *particular documents* desired." *Id.* A party is not entitled to have a mass of records and other documents brought into court in order to search them for evidence. *Id.*

One way to test the relevancy and materiality of documents required by a subpoena *duces tecum* is a motion to quash the subpoena. This motion gives the court the opportunity to determine the apparent relevancy of the documents. *Id.* When the propriety of a subpoena *duces tecum* is challenged, the question is addressed to the sound discretion of the trial court, and is not subject to

review absent a showing of abuse of discretion. *Id.; see also Newell, supra.*

In this case three motions by the defendant, including a motion for a bill of particulars and a so-called "Brady Motion" requesting disclosure by the State of various statements and reports, were heard prior to trial by Judge Donald Stephens. Judge Stephens noted that the district attorney has an obligation to provide documents and other tangible objects that it has; however, if the district attorney does not have the requested reports, the court cannot enter an order compelling disclosure of the reports. Judge Stephens suggested that defense counsel could subpoena the records he was seeking and the necessity of disclosing them could be determined at a later hearing.

Immediately prior to trial on 19 June 1989, the trial court considered defendant's motion *in limine* concerning subpoenas the defendant had caused to be issued to Wake Medical Center, Wake County Public Schools, Wake County Mental Health Center, and Wake County Department of Social Services. The prosecutor made an oral motion to quash the subpoenas. After reviewing the subpoenas and hearing the arguments of counsel, the trial court granted the motion to quash the subpoenas, with the exception of medical records relating to an October 1988 examination of the victim.

With the exception of the medical report concerning a specific playground accident in October 1988, the trial court was not satisfied that the records subpoenaed by defendant contained any patently material evidence. The disputed subpoenas requested *all* files and records relating to the child and made no reference to a specific time period, date, or contents. Such broad categories are inappropriate for subpoenas *duces tecum. Newell, supra.* Despite being confronted with the subpoenas and the motion to quash immediately prior to jury selection, the trial court nevertheless held a lengthy discussion with the defense counsel and the prosecuting attorney regarding defendant's justifications for seeking the various records. Clearly, this is not a case where specific documents were kept from defendant. On the contrary, on the one occasion when defendant stated with precision the document he sought and why it was needed, the report was made available. To the extent the remaining subpoenas were quashed, we find no abuse of discretion.

**[2, 3]** Defendant also argues that the trial court's ruling on the motion to quash was erroneous because it resulted in one superior

court judge impermissibly overruling another and that the trial court was required to review the documents requested and seal them for appellate review. These arguments are without merit. First, it is disingenuous to categorize Judge Stephens' comment at the pretrial motions hearing concerning the possible use of subpoenas to obtain records not in the possession of the district attorney, but sought by defendant, as an "order." Second, unlike the procedure following a request for disclosure of evidence within the State's possession which requires an *in camera* inspection by the trial court, *see, e.g., State v. Brown*, 306 N.C. 151, 293 S.E.2d 569, *cert. denied*, 459 U.S. 1080, 103 S.Ct. 503, 74 L.Ed.2d 642 (1982), there is no requirement that a trial court review the records and files of non-parties sought pursuant to a subpoena *duces tecum* prior to quashing the motion. *See, e.g., Vaughan, supra. But cf. State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988) (State's interest in maintaining confidential files and defendant's right to access information necessary to preparation of his defense properly balanced by an *in camera* review of the records by the trial court). Finally, defendant, relying on *Pennsylvania v. Ritchie*, 480 U.S. 139, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), argues that he had a right under the Federal Constitution to have the documents noticed in the subpoenas reviewed *in camera* by the trial court. We disagree. *Ritchie* is factually distinguishable from the present case in several significant respects. Compliance with the subpoena in *Ritchie* was not based on precision or specificity. Rather, the issue of primary concern in *Ritchie* was the extent to which a state statute protecting the public's interest in keeping sensitive documentary information confidential precluded disclosure in criminal prosecutions. Here the trial court's concern was the overbreadth of the subpoena and, to an extent, the lack of any showing of materiality (with the exception of the October 1988 medical report). We therefore do not find *Ritchie* controlling on these facts.

[4] In his second assignment of error defendant contends that the trial court erred in allowing the victim's mother, Angela Winston, to testify as follows:

Q. Has she ever lied to you about anything of this magnitude?

A. Not—not in this manner.

Defendant contends that this was improper lay opinion testimony and that its admission requires a new trial. Rule 701 of the North Carolina Rules of Evidence permits opinion testimony by a lay

witness where the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue. N.C. Gen. Stat. § 8C, Rule 702 of the N.C. Rules of Evidence (1988). Angela Winston's testimony was based on her own perception. Prior to making the challenged statements, she had repeatedly testified that at first she did not believe the incidents between her daughter and defendant had occurred. She had also related various occasions when the victim had lied to her in the past. When read in context, the challenged testimony was helpful to the jury in understanding her testimony and its admission was proper. This assignment is overruled.

[5] Defendant next contends that the trial court erred in qualifying Kimberly Crews, a counselor at Wake Medical Center, and Dr. Denise Everette, a pediatrician at Wake Medical Center, as experts and in allowing them to testify as to their opinions concerning symptoms and characteristics of sexually abused children and to state their opinions that the victim exhibited symptoms that were consistent with sexual abuse. We disagree.

Whether or not a witness is qualified as an expert is a question of fact and is a determination ordinarily within the exclusive province of the trial judge. *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985). To qualify as an expert, one need not be a specialist or have a license from an examining board or be engaged in any particular profession. As long as study, experience, or both makes the witness better qualified than the jury to draw appropriate inferences from the facts, he may be qualified as an expert. *Id.*; *see also* 1 *Brandis on North Carolina Evidence* § 133 (3rd ed. 1988). A finding by the trial court that the witness is qualified will not be reversed unless there was no competent evidence to support it or the court abused its discretion. *Young, supra* (citations omitted).

Kimberly Crews was qualified by the court as an expert in counseling for sexually abused children. Ms. Crews testified that she had counseled children suspected of being sexually abused for five years and had interviewed between 500 and 600 children in her capacity as a sexual abuse counselor. She had a bachelor's degree in psychology, a master's degree in counseling, and had attended specialized training in the areas of sexual abuse counseling and investigation. Dr. Denise Everette was qualified as an expert in the field of child sexual abuse. Dr. Everette testified that after

receiving her MD, she completed a pediatrics residency. Dr. Everette also testified that she had attended various educational workshops on child sexual abuse and that she conducts workshops and gives lectures on child sexual abuse throughout North Carolina. During the course of her career, Dr. Everette testified that she has seen 300 children for evaluation of suspected sexual abuse. We conclude that there was ample evidence in the record to support the trial court's qualification of Ms. Crews and Dr. Everette as experts in their respective areas.

The matters testified to by these experts were properly admitted. Allowing experts to testify as to the symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse is proper. *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987). Where scientific, technical, or other specialized knowledge will assist the fact finder in determining a fact in issue or in understanding evidence, an expert witness may testify in the form of an opinion. *Id.* The fact that such evidence may support the credibility of the victim does not automatically render it inadmissible. *Id.* We have reviewed the challenged testimony and find it to be well within the range of admissibility. These assignments are therefore overruled.

[6] In his fourth assignment of error defendant contends that the trial court committed plain error in instructing the jury on the charge of indecent liberties. The trial court instructed the jury as follows:

[T]hat the defendant willfully took an indecent liberty with a child for the purpose of arousing or gratifying sexual desire. An indecent liberty is an immoral, improper, or indecent touching or act by the defendant upon the child or an inducement by the defendant of an immoral or indecent touching by the child.

Defendant argues that the instruction denied him the constitutional right to a unanimous verdict. Defendant relies on *State v. Britt*, 93 N.C. App. 126, 377 S.E.2d 79 (1989), in support of this argument. Our Supreme Court has recently overruled *Britt* on this issue. *See State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990). The identical instruction regarding indecent liberties was upheld in *Hartness*. This assignment is accordingly overruled.

[7]  In his final assignment of error, defendant argues that the concurrent life sentences he received for his convictions for first degree rape and first degree sexual offense constitute cruel and unusual punishment in violation of his state and federal constitutional rights. Defendant admits the challenged statutes have been addressed in prior decisions and were not found to be violative of the eighth amendment. Nevertheless, he argues that mandatory life sentences constitute cruel and unusual punishment when applied to him. This assignment is without merit. Defendant's case is indistinguishable from those in which mandatory life sentences have been imposed for first degree sexual offense or first degree rape. *See, e.g., State v. Higgenbottom*, 312 N.C. 760, 324 S.E.2d 834 (1985) (imposition of mandatory sentence of life for first degree sexual offense not violative of the eighth amendment) and *State v. Peek*, 313 N.C. 266, 328 S.E.2d 249 (1985) (mandatory life sentence for first degree rape not unconstitutionally excessive). Even consecutive life sentences for the identical crimes have been upheld as constitutionally valid. *See State v. Ysaguire*, 309 N.C. 780, 309 S.E.2d 436 (1983). This assignment is accordingly overruled.

Defendant received a fair trial, free from prejudicial error. Accordingly, we find

No error.

Judges EAGLES and LEWIS concur.