**FIELDS v. McMAHAN**

[218 N.C. App. 417 (2012)]

WENDY L. FIELDS v. CYNTHIA McMAHAN

No. COA11-1043

(Filed 7 February 2012)

**Appeal and Error—preservation of issues—constitutional issue—not raised at trial—dismissed**

Plaintiff's argument that the trial court erred in allowing defendant's motion to compel discovery was dismissed where plaintiff raised a constitutional argument on appeal which had not been presented and ruled upon by the trial court.

Appeal by plaintiff from order entered 1 June 2011 by Judge William R. Pittman in Chatham County Superior Court. Heard in the Court of Appeals 11 January 2012.

*Maxwell, Freeman & Bowman, P.A., by John A. Bowman, for plaintiff-appellant.*

*Essex Richards, P.A., by Edward G. Connette, for defendant-appellee.*

BRYANT, Judge.

Because plaintiff raises on appeal a constitutional argument which has not been presented and ruled upon by the trial court, we dismiss the appeal.

On 28 September 2010, plaintiff Wendy Fields, filed a complaint against defendant Cynthia McMahan in Chatham County Superior Court alleging breach of contract, breach of partnership, actual fraudulent inducement to contract, constructive fraudulent inducement to contract, tortious interference with existing contract, tortious interference with prospective economic advantage, libel, slander of title, unfair and deceptive trade practices, and punitive damages. On 10 November 2010, defendant answered plaintiff's complaint and counterclaimed for breach of contract, breach of fiduciary duty, and statutory conspiracy. Defendant voluntarily dismissed the counterclaim for statutory conspiracy on 3 February 2011.

The subject of the action is a show dog, a German Shepard named Bill von der Fürstenau (hereinafter "Bill"). Bill was bred and resides in Germany. His pedigree—his title document which contains his formal lineage—was issued under the authority of the *Verein fur Deutsche Schaferhunde (SV) E.V.* (hereinafter "SV"). Prior to this

action, Bill was owned in part by German national Lothar Vörg. In her complaint, plaintiff asserted that under SV rules, a German Shepard owned in whole or in part by a German national could not breed through artificial insemination; however, if Bill was owned by American citizens, plaintiff asserted, he could be registered with the American Kennel Club (AKC) and utilize artificial insemination.

Plaintiff asserted that Bill had been world ranked since 2009 and, after having earned the "Sieger" title "VA1" at the 2009 North American Sieger Show—a national conformation show of the Working Dog Association of the German Shepard Dog Club of America, Bill held the ranking of #1 adult male German Shepard Dog in the United States.

In September 2009, plaintiff purchased a one-half interest in Bill for $41,500.00. Plaintiff co-owned Bill with Vörg who maintained physical custody of Bill. Within a week of plaintiff's purchase, Vörg sold his one-half interest in Bill to defendant. Pursuant to the purchase agreements entered into by both plaintiff and defendant, Vörg surrendered physical custody of Bill to Jochen Janz, "a German national and internationally recognized breeder, trainer and handler . . . ."

Plaintiff asserted that after defendant's acquisition of interest, defendant refused to pay for any of Bill's expenses leaving plaintiff to pay for all of Bill's non-custodial costs, including, international air travel expenses, show entry fees, sperm supplement, and semen collection fees. Moreover, plaintiff asserts "Defendant had the affirmative obligation to convey her title and interest in Bill to Jochen Janz" in the spring of 2010 but failed to do so.

On 24 May 2011, defendant filed Defendant's Motion to Compel Discovery specifically requesting that plaintiff produce all correspondence to and from Janz beginning 1 January 2009 through 24 May 2011, as well as, all cell phone records and credit card receipts for the month of June 2010.

On 1 June 2011, an order was entered in Chatham County Superior Court allowing "Defendant's Motion to Compel Discovery as it relates to Request for Production numbers 3 and 10[.]" From entry of this order, plaintiff appeals.

On appeal, plaintiff questions whether the trial court erred in allowing defendant's motion to compel discovery. Plaintiff argues that the trial court's order compelling compliance with defendant's discovery requests infringes upon her privilege against self-incrimination

protected by the Fifth Amendment to the United States Constitution and affects a substantial right, making the order appealable. We hold the argument plaintiff raises is not properly before us.

"[O]rdinarily, discovery orders are interlocutory and are not subject to immediate appeal. Orders that are interlocutory are subject to immediate appeal when they .affect a substantial right of a party." *Lowd v. Reynolds*, ___ N.C. App. ___, ___, 695 S.E.2d 479, 482 (2010) (citation omitted).

> [T]he right against self-incrimination is a very substantial right, indeed, protected by both the United States and North Carolina Constitutions, and if some of the interrogatories are incriminating, as [plaintiff] contends, and [she] is nevertheless compelled to answer them now [her] constitutional right could be lost beyond recall and [her] appeal at the end of the trial would be of no value.

*Shaw v. Williamson*, 75 N.C. App. 604, 606-07, 331 S.E.2d 203, 204 (1985) (citation omitted). However, "[a] constitutional issue not raised at trial will generally not be considered for the first time on appeal." *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) (per curiam) (citations omitted).

On 24 May 2011, defendant filed a motion to compel discovery seeking a court order compelling plaintiff to respond to interrogatories and requests for production of documents. Defendant stated that she served her First Set of Interrogatories and Requests for Production of Documents upon plaintiff on 29 December 2010, and, on 10 March 2011, plaintiff provided "deficient" responses.

In defendant's motion to compel discovery, defendant identified requests No. 3 and No. 10 as receiving deficient responses.

> 3. Identify and produce any and all correspondence, including all email communications, to or from Jochen Janz, for the period beginning January 1, 2009, and continuing to the present. This requests specifically includes e-mail to or from [plaintiff's] email account . . . .
>
> . . .
>
> 10. Please provide all cell phone records and credit card receipts for the month of June 2010.

In support of her motion, defendant made the following arguments:

These Requests [sic] are relevant and would likely lead to admissible evidence for several reasons:

a. Plaintiff has alleged breach of contract by Defendant, but Jochez Janz is a central party to the contract and has a financial interest in the lawsuit. Janz is the individual who induced both Plaintiff and Defendant to enter the contract, so Plaintiff's communications with Janz would be very relevant in this action.

b. It also appears from discovery that Jochen Janz fraudulently induced Ms. McMahan into purchasing her half interest in Bill without disclosing to her the personal relationship he had with the Plaintiff.

c. In addition, the email and cell phone records may reveal improper motive on Plaintiff's part in pursuing her claims against defendant. Specifically, Jochen Janz, a German citizen, fled the country after warrants were issued in Chatham County for charges arising out of his physical assault on Defendant. With the warrants outstanding, Janz cannot return to the United States. It appears that Plaintiff has a personal relationship with Janz, and that one of her motives in pursuing this action is to coerce Defendant into seeking a dismissal of the criminal charges.

d. Jochen Janz fled the country to avoid arrest and prosecution in June 2010. Plaintiff's cell phone records and credit card receipts for that month are relevant to determine whether she assisted, either directly or indirectly, in his leaving the country.

e. The emails, cell phone records, and credit card records would likely contain information related to impeachment and admissions.

In response to defendant's motion to compel discovery, plaintiff filed a memorandum of law in opposition to defendant's motion. In addition to contesting the grounds for objection defendant set forth in paragraphs (a) through (e), plaintiff also forecasts the assertion of her Fifth Amendment privilege against self-incrimination in the event the trial court allowed defendant's motion.

**FIELDS v. McMAHAN**

[218 N.C. App. 417 (2012)]

In this action, there is no motive personal to the Plaintiff other than to rectify the cloud on her title to Bill. Plaintiff has a legitimate, stand-alone civil action against Defendant concerning the ownership of Bill which pre-dates the criminal charges against Janz. Criminal charges are separate from the allegations and arguments herein. . . .

Frankly, it is Plaintiff's view that Defendant seeks information concerning these phone records and credit card records from June, 2010 solely for the purpose of turning such information over to the authorities in hopes of subjecting Plaintiff to criminal exposure. . . .

. . .

The only purpose for Defendant's Requests Nos. 3 and 10 is to re-direct focus of this contract matter with inflammatory information and to annoy and embarrass the Plaintiff. Further, Defendant wants to carry out her threat of securing phone records and credit card statements so as to possibly subject Plaintiff to criminal exposure in aiding or assisting Mr. Janz's return to Germany. *To be clear, if necessary, the Defendant reserves her right to invoke her Fifth Amendment privilege against self-incrimination.*

. . .

The requested documents have absolutely nothing to do with, and will not lead to the discovery of admissible evidence concerning ownership of the dog, Bill. *Should Defendant's Motion to Compel on these two Requests be granted, the Plaintiff reserves the right to assert her Fifth Amendment privilege.*

. . .

Defendant's Motion to Compel should be denied in its entirety.

In the alternative, should the [trial court] grant the Motion to Compel, with regard to Requests for Production of Nos. 3 and 10, *the Plaintiff wants to be clear that Plaintiff's Fifth Amendment privilege will be invoked.*

(Emphasis added).

On 1 June 2011, the trial court entered an order stating that "Defendant's Motion to Compel Discovery as it relates to Request for Production numbers 3 and 10 is allowed . . . ." The record does not

otherwise reflect that plaintiff invoked her Fifth Amendment right against self-incrimination and obtained a ruling from the trial court after assertion of the right. Therefore, the trial court had no opportunity to rule on the constitutional issue. *See Sugg v. Field*, 139 N.C. App. 160, 164, 532 S.E.2d 843, 846 (2000) ("[T]his Court has made it clear that where the privileged information sought from a plaintiff in discovery is material and essential to the defendant's defense, plaintiff must decide whether to come forward with the privileged information or whether to assert the privilege and forego the claim in which such information is necessary. Dismissal is not automatic; before dismissing a claim based upon plaintiff's refusal to testify in reliance upon the privilege against self-incrimination, the court must employ the balancing test recognized in [*Qurneh v. Colie*, 122 N.C. App. 553, 558, 471 S.E.2d 433, 436 (1996), and *Cantwell v. Cantwell*, 109 N.C. App. 395, 427 S.E.2d 129 (1993)]. This test involves weighing a party's privilege against self-incrimination against the other party's rights to due process and a fair trial. *See Cantwell* at 397, 427 S.E.2d at 130 . . . ."). As such, plaintiff, on appeal, asserts a constitutional privilege that has not been presented and ruled upon by the trial court. *See Anderson*, 356 N.C. at 416, 572 S.E.2d at 102 ("[a] constitutional issue not raised at trial will generally not be considered for the first time on appeal." (citations omitted)). Accordingly, we dismiss this appeal.

Dismissed.

Judges ELMORE and ERVIN concur.